U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**2018 SEP -7  PM 12: 34**

CLERK

BY _____
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

)
ANTONY SUTTON, in his capacity as a Limited )
Partner of Jay Peak Hotel Suites LP, GLYN )
MOSER, in his capacity as a Limited Partner of Jay )
Peak Hotel Suites Phase II LP, and PATRICK )
TAWIL, in his capacity as a Limited Partner of Jay )
Peak Lodge and Townhouses LP )
    Plaintiffs )
v. )
)
PEOPLE'S UNITED FINANCIAL, INC., as )
Successor in Interest to Chittenden Trust Company, )
and PEOPLE'S UNITED BANK )
    Defendants )
)

Civil Action No.  $2 : 18 \cdot cv \cdot 146$

## CLASS ACTION COMPLAINT

### INTRODUCTION

1. Plaintiffs, Antony Sutton, Glyn Moser and Patrick Tawil bring this class action on behalf of a
   proposed class of 836 individuals, who invested in the development of the Jay Peak Ski
   Resort ("Jay Peak") located in Jay, Vermont. It relates to an alleged Ponzi like scheme,
   discovered as the result of a two year investigation by the U.S. Securities Exchange
   Commission ("SEC").

2. The SEC filed a civil enforcement action in the U.S. District Court for the District of South
   Florida in April, 2016, which was known as Civil Action No. CV2016:21301 ("SEC
   Action") (See attached Exhibit "A"). The SEC complaint alleged fraud and other illegal
   conduct perpetrated by various individual defendants in that action, including Ariel Quiros
   ("Quiros") and William Stenger ("Stenger").

3. The Defendants named in this action are People's United Financial, Inc. ("People's United") and Peoples United Bank ("People's Bank"). On January 2, 2008, People's United acquired the Chittenden Corporation, the bank holding company for the Chittenden Trust Company ("Chittenden Trust"). At the time of the acquisition, Chittenden Trust was acting as escrow agent for investor funds related to limited partnerships known as Jay Peak Hotel Suites LP ("Phase I") and Jay Peak Hotel Suites Phase II LP ("Phase II").

4. People's Bank is a federally chartered savings bank headquartered in Bridgeport, Connecticut, and is a subsidiary of People's United. In July 2008, People's United and People's Bank consolidated the Chittenden entities that they had acquired into People's United Bank, and renamed the Chittenden Trust franchises as People's United Bank. The newly named People's United Bank acted as escrow agent for all six (6) of the other Jay Peak related limited partnerships.

5. Plaintiffs herein, and all similar investors, entered into escrow agreements with the People's Defendants with respect to their $500,000 limited partner investments. Plaintiffs claim that the People's Defendants breached their contractual obligations to the investors, breached their fiduciary duties and/or negligently permitted Quiros and Stenger to withdraw and misappropriate monies held in escrow by the People's Defendants.

## THE PARTIES

1. Plaintiff, Antony J. Sutton ("Sutton") is a limited partner of the Jay Peak Hotel Suites LP and has a residential address of 126 Homestead Lane, Welwyn Garden City, Hertfordshire, England ALZ 4NX.

2. Plaintiff, Glyn Xavier Moser ("Moser") is a limited partner of the Jay Peak Hotel Suites Phase II LP with a residential address of 7412 Mayfair Court, University Park, Florida.

3.   Plaintiff, Patrick A. Tawil ("Tawil") is a limited partner of the Jay Peak Lodge and Townhouses LP with a residential address of 1280 Medford Road, Pasadena, California.

4.   Defendant, People's United Financial, Inc., is a diversified financial services company with a principal office located at Bridgeport, Connecticut.

5.   Defendant, People's United Bank, is a federally chartered savings bank with a principal office located in Bridgeport, Connecticut, and is a wholly owned subsidiary of People's United Financial, Inc.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over this action under CAFA, 28 U.S.C. § 1332(a). At least one Class member is of diverse citizenship from one Defendant. The proposed Class consists of more than 100 members, and the amount in controversy for the Class exceeds $5 million, exclusive of interest and costs. Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

7.   The Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §§ 1965(b). Specifically, a substantial portion of Defendants' acts giving rise to the claims alleged herein were performed in this district or directed at this district. In addition, each of the Defendants availed themselves of the rights and protections of Vermont, reside or maintain offices here, maintain registrations with state regulators in Vermont, and/or have ongoing, substantial, and intentional business contacts with Vermont.

8.   Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants transact business and may be found in this District. Venue is also proper here because at all times

relevant hereto, the practices complained of herein occurred in the State of Vermont and in this District.

## ALLEGATIONS OF FACT

9. The Plaintiffs and all 836 investors in the scheme were limited partners of eight (8) different Vermont limited partnerships involved in the development of Jay Peak, and subsequently another Vermont ski resort known as Burke Mountain.

10. The limited partnerships were funded solely by foreign investors who also sought immigrant status in the United States under the EB-5 ("EB-5") Immigrant Investor Program, a federal program, which provides immigrants the opportunity to become permanent U.S. residents by investing in U.S. enterprises that create jobs in the U.S.

11. In order to qualify for an EB-5 visa, a foreign applicant must invest $500,000 or $1 million, depending on whether the projects are sponsored by so-called 'Regional Centers' (the State of Vermont until recently had such a Regional Center), the money to be utilized in a commercial development project.

12. Having tendered the investment amount, an investor then applies for a conditional two (2) year green card. If the project creates at least ten (10) jobs for each investor during those two years, the applicant may seek a permanent green card, permitting the investor and his/her immediate family members to remain permanently and work in the U.S.

13. Quiros, with the assistance of Stenger, through companies they had created, acquired the assets of Jay Peak in June, 2008 from a Canadian corporation, Saint Sauveur Valley Resorts ("SSVR").

14. SSVR was the originator of the EB-5 investment program, and had received funds from investors for the first and second phase of the Jay Peak development, intending to build a hotel and an indoor waterpark at the resort.

15. It is undisputed that in June, 2008, one week before the closing for Quiros' purchase, SSVR transferred possession and control of $15 million of Phase I and II investor monies, held in escrow by Chittenden Trust Company ("Chittenden Trust"), over to Quiros, which he then paid back to SSVR as part of the purchase price for the ski resort. (See attached Exhibit "B").

16. As a consequence of the transfer, the Phase I and II projects were practically insolvent as of the date of the transfer. Quiros and Stenger then embarked on a scheme to raise additional funds utilizing the EB-5 investment program through new limited partnership offerings and new development, such new monies to be used to fund the insolvent earlier projects, thereby creating the Ponzi-like aspect of the scheme.

17. Antony Sutton was a limited partner of Phase I. Glyn Moser was a limited partner of Phase II. The next four (4) limited partnerships were organized by Quiros and Stenger after the purchase in order to further develop the Resort. They were respectively known as Jay Peak Penthouse Suites LP ("Phase III"), Jay Peak Golf and Mountain Suites LP ("Phase IV"), Jay Peak Lodge and Townhouses L.P. ("Phase V"), Jay Peak Hotel Suites Stateside LP ("Phase VI"). Patrick Tawil was a limited partner of Phase V.

18. There were two (2) additional limited partnerships created by Quiros and Stenger, which were not directly related to the resort. Jay Peak Biomedical Research Park L.P. ("Phase VII") was created to construct a biomedical research center in Newport, Vermont. Q Burke Mountain Resort Hotel and Conference Center, L.P. (the "Q Burke Limited Partnership" or

5

"Phase VIII") was created in order to acquire and develop another ski resort known as Burke Mountain in Burke, Vermont.

19. All eight (8) limited partnerships were named as Defendants in the SEC Action, and presently are under the control and supervision of Michael I. Goldberg, Esq., the Court appointed Receiver in the SEC Action ("Receiver").

20. The offering materials for each of the Limited Partnerships stated that the monies invested by investors would be used by each of the Limited Partnerships to purchase real estate, construct a specific improvement or set of improvements, and then operate the improvements once built.

21. Among the documents included in each business plan was one showing the projected cost of each project and the specific allocation of investor funds.  These "Use of Proceeds" documents detailed exactly how each Limited Partnership would spend all investor funds raised for the Limited Partnership to pay for land acquisition, site preparation, and construction.

22. The offering materials for each of the limited partnerships included a written 'Limited Partnership Agreement'.  These agreements included as attached Exhibits (1) a 'Master Escrow Agreement' between the limited partnership and the bank (See attached Exhibit "C"), and an 'Investor Escrow Agreement' ("Investor Agreement") between the investor and the bank (See attached Exhibits "D" and "E"), which together expressly restricted the use of escrowed investor monies.

23. Under the subscriptions documents, including the escrow agreements, the general partner of the limited partnerships, without consent of the limited partners, could not: (a) borrow from or commingle investor funds; (b) acquire any property with investor funds that did not belong

to that limited partnership, other than as specifically authorized in the agreement; or (c)
mortgage, convey or encumber limited partnership property that was not real property.

24. In order to purchase a limited partnership interest in any phase, each investor was required to
(a) enter into an Escrow Agreement; and (b) transfer funds to People's Bank, with $500,000
as the Limited Partnership investment and an additional sum, usually $50,000, for
administrative fees.

25. The Escrow Agreements and the offering materials provided that People's Defendants would
release the escrowed funds only for use by the specific limited partnership in which the
investor had purchased an interest, not to another limited partnership or to Quiros for his
personal use.

26. Each investor in the Limited Partnerships, including Plaintiffs, deposited these funds into a
People's Bank (Chittenden Trust) escrow account corresponding to the specific EB-5 Project
in which the investor was participating.

27. Jay Peak, Inc. and Jay Peak Management, Inc. were the operating companies, which oversaw
the day to day operations of the Jay Peak Resort, and were both controlled by Quiros and
Stenger. Upon information and belief, both maintained multiple operating accounts with the
People's Defendants, with substantial seven figure balances, and therefore Quiros and
Stenger were in a position to exert influence on the bank, and its employees, including those
responsible for the limited partner escrow accounts.

28. The People's Defendants, on instructions from Stenger, Quiros and others, consciously,
recklessly and/or negligently released escrowed investor funds for each of the eight (8)
limited partnerships to projects other than those associated with the escrow accounts and for
Quiros' personal expenses (See Attached Exhibit "F" and "G").

29. The Phase I, Phase II, and Phase III offering materials provided that escrowed investor funds could only be held in *bank* accounts, the Phase I and II documents requiring transferee bank accounts to be "insured by an agency of the federal government."

30. The People's Defendants had knowledge of these restrictions, but nonetheless permitted the Phase I and II escrowed monies to be transferred to accounts at Raymond James, which was neither a bank, nor FDIC-insured.

31. The transfers of Phase I and II escrowed funds violated the terms of the escrow and permitted Quiros and Stenger to use these monies to purchase the Jay Peak Resort from SSVR.

32. Plaintiffs, on behalf of the class, bring claims against the People's Defendants, claiming that the bank breached escrow agreements entered into with the Plaintiffs, and all the individual investors, breached fiduciary duties arising under those agreements and were negligent in permitting Stenger, while acting on behalf of SSVR prior to the purchase, and then Quiros and Stenger, after the purchase, to transfer, steal, and/or otherwise misappropriate escrowed funds held by the Defendants for uses other than those mandated under the escrow agreements and subscription agreements for the various limited partnerships.

## CLASS ACTION ALLEGATIONS

33. Plaintiffs bring this lawsuit as a Class action on behalf of themselves and all other persons similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).

34. The Class is defined as:

> All persons who invested in the eight (8) Limited Partnerships. Excluded from this Class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

8

35. Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

36. The Class satisfies the requirements of Rule 23(a), as well as 23(b)(3).

37. Numerosity.  The Class consists of more than 800 geographically dispersed individuals. Joinder of the Class members is not practicable.  The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.

38. Ascertainibility. The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by the Jay Peak and Q Burke Projects. Notice of this action can thus be provided to all members of the proposed Class.

39. Typicality.  Plaintiffs were investors in the Jay Peak and Q Burke Projects at the time of the wrongdoing alleged herein.  Plaintiffs' claims are typical of the claims of all Class members as all Class members are similarly affected by Defendants' wrongful conduct as complained of herein.

40. Adequacy.  Plaintiffs are committed to prosecuting the action, will fairly and adequately protect the interests of the members of the Class, and have retained counsel competent and experienced in class action litigation, including litigation relating to investment fraud. Plaintiffs have no interests antagonistic to or in conflict with other members of the Class.

41. Commonality and Predominance.  Common questions of law and fact exist as to all members of the proposed Class and predominate over any questions solely affecting individual members of the proposed Class.  The questions of law and fact common to the Class include, but are not limited to:

a. Whether People's Bank breached the escrow agreements entered into with the Plaintiffs and the Class, thereby causing damages to the Plaintiffs and the Class;

b. Whether People's Bank owed a duty of care to each investor in the Limited Partnerships, and breached that duty by negligently permitting transfers of funds for uses not permitted by the escrow agreements and subscription agreements for the various limited partnerships, causing damages to the Plaintiffs and the Class;

c. Whether People's Bank breached a fiduciary duty owed to each investor in the Limited Partnerships by negligently permitting transfers of funds for uses not permitted by the escrow agreements and subscription agreements for the various limited partnerships, causing damages to the Plaintiffs and the Class;

d. Whether People's Bank breached an implied covenant of good faith and fair dealing in permitting its existing significant business relationships with Quiros and Stenger to affect its handling of investor escrowed monies for the limited partnerships.

42. The Class may be certified under Rule 23(b)(3). Questions of law or fact common to Class members predominate over any questions affecting only individual members. Class treatment of such common questions of law and fact is a superior method to piecemeal litigation because class treatment will conserve the resources of the courts and will promote efficiency of adjudication. Class treatment will also avoid the substantial risk of inconsistent factual and legal determinations on the many issues in this lawsuit. There will be no unusual difficulty in the management of this action as a Class action.

## COUNT I
## BREACH OF CONTRACT
## AGAINST
## PEOPLES UNITED, PEOPLES BANK

43. Plaintiffs re-allege and incorporate paragraphs 1-42 above as if fully set forth herein.

44. In connection with their investments in the Limited Partnerships, each Plaintiff and each member of the Class entered into an Escrow Agreement with People's Bank.

45. Pursuant to these Escrow Agreements, each investor in a Limited Partnership sent his or her funds into an escrow account at People's Bank in the name of the Limited Partnership.

46. The Escrow Agreements provided that upon release of the escrowed funds, these funds would be committed to the specific Limited Partnership project for which the funds were placed in escrow.

47. People's Bank breached its escrow obligations by releasing the escrowed funds for improper use to accounts not controlled by the Limited Partnership for which the funds were placed in escrow.

48. As a result of the breach of the Escrow Agreements, Plaintiffs and the Class have suffered damages.

## COUNT II
## NEGLIGENCE
## AGAINST
## PEOPLES UNITED, PEOPLES BANK

49. Plaintiffs re-allege and incorporate paragraphs 1-48 above as if fully set forth herein.

50. In connection with their investments in the Limited Partnerships, Plaintiffs and each member of the Class entered into an Escrow Agreement with People's Bank and transferred funds into an escrow account at People's Bank in the name of the Limited Partnership in which he or she had invested.

51. Due to the escrow relationship between Plaintiffs and members of the Class and People's Bank, People's Bank had a duty to exercise reasonable skill, care and diligence in preserving and/or disbursing the investor funds entrusted to it.

52. By permitting the release of escrowed funds for uses other than those permitted by the terms of the escrow agreements, and/or by failing to notify Plaintiffs and the Class of improper

11

activity occurring in connection with the escrowed funds, the People's Defendants breached their fiduciary duties to Plaintiffs and the Class.

53. As a result of this breach of duty, Plaintiffs and the Class have suffered damages.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
**AGAINST**
**PEOPLES UNITED, PEOPLES BANK**

54. Plaintiffs re-allege and incorporate paragraphs 1-53 above as if fully set forth herein.

55. As part of investing in the Limited Partnerships, each investor sent his or her funds into an escrow account at People's Bank that was named for the Limited Partnership in which he or she had invested.  People's Bank thus owed escrow obligations to Plaintiffs and each member of the Class.

56. Due to the escrow relationship between Plaintiffs and members of the Class and the People's Defendants, the banks owed a fiduciary duty to Plaintiffs and the Class.  This fiduciary duty includes, at a minimum, an obligation to exercise reasonable skill, care and diligence in preserving and/or disbursing limited partnership investor funds entrusted to it, to prevent those funds from being utilized for uses unrelated to the project associated with each limited partnership.

57. By permitting the release of escrowed funds for uses other than those permitted by the terms of the escrow agreements, and/or by failing to notify Plaintiffs and the Class of improper activity occurring in connection with the escrowed funds, the People's Defendants breached their fiduciary duties to Plaintiffs and the Class.

58. As a result of Defendants' breaches of fiduciary duty, Plaintiffs and the Class have suffered damages.

59. The specific misconduct that gives rise to this claim for fiduciary breach was intentional, malicious, deliberate, outrageous and reprehensible, and/or so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the investors. Furthermore, officers of Chittenden Trust and People's Bank knowingly and intentionally engaged in such conduct, and/or knowingly condoned, ratified or consented to such conduct. Consequently, an award of punitive damages and/or attorneys' fees is appropriate.

## COUNT IV
## BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING
## AGAINST
## PEOPLES UNITED, PEOPLES BANK

60. Plaintiffs re-allege and incorporate paragraphs 1-59 above as if fully set forth herein.

61. Quiros and Stenger, through the numerous seven (7) figure bank accounts they maintained through Jay Peak, Inc. and Jay Peak Management, Inc., were in a unique position to exert influence and control over the conduct of officers and employees of the bank.

62. Quiros and Stenger did use their influence to compel the bank to make transfers of funds held in the limited partnership escrow accounts for improper uses.

63. The conduct of the bank and its employees breached the implied covenant of good faith and fair dealing arising from its relationship with the investors.

64. As a result of this breach, Plaintiffs and the Class have suffered damages.

65. The specific misconduct that gives rise to this claim for breach was intentional, malicious, deliberate, outrageous and reprehensible, and/or so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the investors. Furthermore, officers of Chittenden Trust and People's Bank knowingly and intentionally engaged in such

13

conduct, and/or knowingly condoned, ratified or consented to such conduct. Consequently, an award of punitive damages and/or attorneys' fees is appropriate.

**WHEREFORE**, the Plaintiffs requests this Court do as follows:

    a.  Adjudge and decree that Defendants have engaged in the conduct alleged herein;

    b.  Enter judgment against Defendant for their damages plus interest, costs and attorneys' fees;

    c.  Award punitive damages and/or attorneys' fees as the result of the intentional misconduct alleged in Counts III and IV; and

    d.  Grant such other relief as this Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL POSSIBLE ISSUES.**

For the Plaintiffs and the Class,
By their Attorneys,

Joshua L. Simonds, Esq.
The Burlington Law Practice, PLLC
2 Church St. Suite 2G
Burlington VT 05401
(802) 651-5370
jls@burlingtonlawpractice.com

Keith L. Miller
*Admission Pro Hac Vice Pending*
Mass. Bar Reg. No. 347280
Fifty-Eight Winter Street, 4th Floor
Boston, MA 02108
(617) 523-5803
Klm4law@aol.com

9/7/18